*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**
**File Name: 08b0009n.06**

In re:  MICHAEL MARK NOWAK and
CHRISTINA SUSAN NOWAK,

                Debtors.

_____

PCFS FINANCIAL,

      Appellant,

v.

LYDIA EVELYN SPRAGIN, Trustee,

      Appellee.

No. 07-8037

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division
Case No. 01-50913

Argued: February 5, 2008

Decided and Filed: May 1, 2008

Before: PARSONS, RHODES and SCOTT, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** David A. Freeburg, McFADDEN & FREEBURG CO., L.P.A., Cleveland, Ohio, for Appellant. **ON BRIEF:** David A. Freeburg, McFADDEN & FREEBURG CO., L.P.A., Cleveland, Ohio, for Appellant.

---

**OPINION**

---

MARCIA PHILLIPS PARSONS, Chief Bankruptcy Appellate Panel Judge. PCFS Financial ("PCFS") appeals an order of the bankruptcy court denying PCFS's motion to allow an informal proof of claim. For the reasons that follow, we affirm.

**ISSUES ON APPEAL**

Whether the bankruptcy court erred in concluding that PCFS's filings with the bankruptcy court prior to the claims bar date did not constitute a valid informal proof of claim and abused its discretion in holding that the allowance of such claim would be inequitable.

**JURISDICTION AND STANDARD OF REVIEW**

The Bankruptcy Appellate Panel ("BAP") of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP. 28 U.S.C. § 158(b)(6), (c)(1). Whether an informal proof of claim should be allowed is an equitable determination to be made by the bankruptcy court. *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 607 (6th Cir. 2000) (citing *In re Houbigant, Inc.*, 190 B.R. 185, 187 (Bankr. S.D.N.Y. 1995)). "Equitable determinations are within the sound discretion of the bankruptcy judge and will not be disturbed absent an abuse of discretion." *Id.* (citing *In re Zick*, 931 F.2d 1124, 1126 (6th Cir. 1991)). "An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.'" *In re Eagle-Picher Indus., Inc.*, 285 F.3d 522, 529 (6th Cir. 2002) (alteration in original) (citations omitted). An abuse of discretion occurs only when the bankruptcy court relies upon clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard. *Schmidt v. Boggs (In re Boggs)*, 246 B.R. 265, 267 (B.A.P. 6th Cir. 2000). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *In re Eagle-Picher Indus.*, 285 F.3d at 529.

**FACTS**

This bankruptcy case has a long history including a prior appeal to the BAP[1] and the certification of a question of Ohio law to the Supreme Court of Ohio.[2] The pertinent facts, however, are not in dispute. On March 6, 1998, Michael and Christine Nowak ("Debtors") executed a mortgage in favor of PCFS on their residence in Medina, Ohio. Three years later, on March 20, 2001, the Debtors filed for bankruptcy relief under chapter 7 of the Bankruptcy Code, listing PCFS as a secured creditor. On April 20, 2001, the chapter 7 trustee, Lydia Spragin, ("Trustee") filed a request to issue notices to creditors to file proofs of claim. The clerk set a claims bar date of July 24, 2001.

On October 4, 2001, the Trustee filed a complaint to avoid the lien of PCFS pursuant to 11 U.S.C. § 544(a) on the basis that the mortgage was not executed in accordance with the laws of the state of Ohio. After a trial, the bankruptcy court agreed and entered an order on June 9, 2003, avoiding PCFS's lien and thus rendering PCFS an unsecured creditor. PCFS appealed to the BAP, which certified to the Ohio Supreme Court the question concerning the constitutionality of former Ohio Revised Code § 5301.234, a statute which purported to preserve mortgages notwithstanding certain irregularities. On December 17, 2004, the Ohio Supreme Court issued its opinion concluding that the statute was unconstitutional, and the BAP subsequently affirmed on September 16, 2005, the bankruptcy court's avoidance of PCFS's lien.

While the adversary proceeding was pending, the Trustee filed in the bankruptcy case on August 21, 2002, her Notice of Intent to Sell and Motion to Avoid Lien, Claim, or Encumbrance, whereby she proposed the sale, free and clear of PCFS's lien, of the Debtors' residence that was the subject of the adversary proceeding on the basis that PCFS's lien was in bona fide dispute. PCFS

_____

[1] *In re Nowak*, 330 B.R. 880, 2005 WL 2240974 (B.A.P. 6th Cir. Sept. 16, 2005) (unpublished table opinion).

[2] *In re Nowak*, 104 Ohio St. 3d 466, 2004-Ohio-6777, 820 N.E.2d 335 (2004). PCFS's first appeal to the BAP questioned the constitutionality of former Ohio Revised Code § 5301.234. The BAP certified the question to the Ohio Supreme Court which found the provision to be unconstitutional.

objected to the Trustee's motion, asserting that there was no bona fide dispute and the proposed sale price would not satisfy its lien. In addition to the objection, PCFS filed on January 30, 2003, a motion for relief from automatic stay and abandonment as to the Debtors' residence. The bankruptcy court overruled PCFS's objection to the Trustee's sale motion on February 13, 2003, after which PCFS withdrew its stay relief motion.

After the bankruptcy court ruled in the adversary proceeding and while the matter was on appeal, the Trustee filed on November 21, 2003, an amended sale notice as to the Debtors' residence. PCFS did not object to this notice.

On January 5, 2007, the Trustee filed a Final Report in the bankruptcy case, in which she represented that all property of the estate, not otherwise exempted or abandoned, had been collected and liquidated and that all claims had been examined and objections resolved. Accordingly, the Trustee proposed distribution of funds on hand in payment of the listed, filed claims, which would result in payment of the claims in full with interest. Because PCFS had not filed a formal proof of claim, it was not listed as a creditor to be paid by the Trustee.

On January 8, 2007, PCFS filed an Objection to the Trustee's Final Report and Motion to Allow Informal Proof of Claim, requesting that the court consider collectively as an informal proof of claim its previously filed motion for stay relief and its filings in the adversary proceeding, along with the Debtors' testimony admitting the debt at the trial in the adversary proceeding. Noting that it had set forth in its stay relief motion the amount of its claim, which was $469,017.71 as of the date of filing, along with the documents that support the claim, PCFS requested that its unsecured claim be allowed in this amount and that it be permitted to participate in the estate on a pro-rata basis with other unsecured creditors.

On June 21, 2007, the bankruptcy court issued a memorandum opinion and order overruling PCFS's Objection to the Trustee's Final Report and denying PCFS's Motion to Allow Informal Proof of Claim. Citing the five-part test adopted by the Sixth Circuit Court of Appeals in *Waterman* for the allowance of an informal proof of claim, the court found that PCFS had met the first and fourth parts of the test, that the claim be in writing and filed with the bankruptcy court. *In re M.J.*

4

*Waterman & Assocs., Inc.*, 227 F.3d at 609. However, the bankruptcy court concluded that the second and third elements had not been met, that the writing contain a demand by the creditor on the debtor's estate and express an intent to hold the debtor liable for the debt. The court also concluded that PCFS had not established the fifth factor, that allowance of the claim would be equitable under the circumstances. PCFS timely appealed the bankruptcy court's decision.

## DISCUSSION

"An unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed," subject to certain exceptions that are inapplicable here. Fed. R. Bankr. P. 3002(a); *see* 11 U.S.C. § 502(b)(9) (failure to timely file proof of claim is grounds for disallowance). Conversely, a secured creditor in a chapter 7 case need not file a proof of claim unless it wants to preserve the opportunity for a distribution on any unsecured deficiency, because liens remain unaffected by the bankruptcy proceeding absent specific alteration by the court. *See In re Fink*, 366 B.R. 870, 879 (Bankr. N.D. Ind. 2007); *see also* Fed. R. Bankr. P. 3002 Advisory Committee Note (1983) (secured claim need not be filed); *In re Bain*, 527 F.2d 681, 686 (6th Cir. 1975) ("[A] secured creditor need not file proof of claim in order to rely upon and to enforce his mortgage"). "A proof of claim is a written statement setting forth a creditor's claim." Fed. R. Bankr. P. 3001(a). As a general rule, a proof of claim must conform substantially to the Official Form 10. *Id.*

As to the time for filing a proof of claim, Rule 3002(c) provides that a proof of claim is timely in a chapter 7 case if it is filed not later than 90 days after the first date set for the meeting of creditors under § 341(a) of the Bankruptcy Code. Nonetheless, if notice of insufficient assets to pay a dividend is initially given to creditors, but the trustee subsequently notifies the court that payment of a dividend appears possible, the clerk must notify creditors of that fact and advise them they may file proofs of claim within 90 days after the mailing of the notice. Fed. R. Bankr. P. 3002(c)(5). Moreover, "[a]n unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property." Fed. R. Bankr. P. 3002(c)(3).

Applying these rules to the present case, PCFS, as a secured creditor, was not required to file a proof of claim. However, if PCFS wanted to participate in the case as an unsecured creditor, it was required to file a proof of claim no later than 30 days after the June 9, 2003 order avoiding its lien became final. Because the June 9, 2003 order became final thirty days after the BAP's affirmance on September 16, 2005, the deadline for PCFS to file a proof of claim was October 16, 2005. *See APAC-Va., Inc. v. Jenkins Landsc. & Excav., Inc (In re Jenkins Landsc. & Excav., Inc.)*, 93 B.R. 84, 90 (W.D. Va. 1988) (judgment appealed does not become final for purpose of starting 30-day period of Rule 3002(c)(3) until appeal is concluded). It is undisputed that at no time did PCFS file in this case a proof of claim in the format of Official Form 10.

Nonetheless, PCFS's failure to file a formal proof of claim is not necessarily fatal to the allowance of its claim against the Debtors. Under the common law doctrine of "informal proof of claims," a bankruptcy court may treat a creditor's pre-bar date filings as an informal proof of claim which can be amended after the bar date so that it is in conformity with the requirements of Rule 3001(a). *In re M.J. Waterman & Assocs., Inc.,* 227 F.3d at 608. As explained by the court of appeals in *Waterman*:

> Creditors who have failed to adhere to the strict formalities of the Bankruptcy Code but who have taken some measures to protect their interests in the bankruptcy estate may be able to preserve those interests by showing that they have complied with the spirit of the rules. . . .

> Creditors who ignore the formalistic requirements of the Code do so at their own peril, however, as they run the risk of being denied use of the informal proof of claims doctrine if their pre-bar date actions do not meet the standards imposed in their jurisdiction. These standards are designed to protect the interests of the debtor as well as the other creditors who saw fit to follow the Code's rules and whose interests may be directly affected by the delinquent creditor's failure to file in a timely fashion. It is a delicate balance. On the one hand we do not wish to enact too heavy-handed a measure to punish a creditor who may not have strictly adhered to the formalities of the filing requirements, but whose actions were sufficient to put the court and the debtor on notice of his or her intention to seek to hold the debtor liable. On the other hand, we must protect the rights and interests of the parties at interest whose diligence entitles them to a timely distribution of the estate.

*Id*. at 608-09.

Against this policy background, the Sixth Circuit adopted the following test to determine if a creditor's pre-bar date filings constitute an informal proof of claim: "(1) The proof of claim must be in writing; (2) The writing must contain a demand by the creditor on the debtor's estate; (3) The writing must express an intent to hold the debtor liable for the debt; and (4) The proof of claim must be filed with the bankruptcy court." *Id*. at 609 (citations omitted). If a filing meets all of these criteria, a court may consider, as a fifth element, whether it would be equitable to allow the amendment of the informal proof of claim. *Id*. The court of appeals noted that the first four factors "are indicative only of the proposed claim's validity, while the fifth factor deals with the question of whether the amendment should be allowed once the informal proof of claim is determined to be valid." *Id.*

In concluding in the present case that the pre-bar date filings of PCFS did not meet the second and third elements of the *Waterman* test, the bankruptcy court first examined the motion for stay relief and abandonment filed by PCFS, finding nothing therein that expressed an intent to hold the debtors liable for the debt and observing generally that a motion for stay relief standing alone will not be construed as an informal proof of claim. As to the filings by PCFS in the adversary proceeding, the court noted that PCFS had not pointed to any particular filing as containing the required elements, relying instead on the totality of its filings, which the court found insufficient. The court concluded that it was unclear from its review of these filings whether PCFS intended to seek recovery from the estate as an unsecured creditor.

Even though it concluded that PCFS had not met the four-part test for determining the validity of its claim, the bankruptcy court nonetheless went on to address whether it was equitable to allow PCFS's claim. Appropriately noting its duty in this equitable inquiry to balance the interests of all of the parties involved, *In re M.J. Waterman & Assocs., Inc.,*, 227 F.3d at 610, the bankruptcy court observed that if PCFS's claim were allowed, the distribution to unsecured creditors would drop from 100% plus interest to approximately 29%. The court also cited PCFS's failure to file anything in the case prior to the original claims bar date. The bankruptcy court noted that, unlike other unsecured creditors who were forced to file a proof of claim shortly after the case was commenced, PCFS was given a second chance to file a proof of claim pursuant to Rule 3002(c)(3). Observing

7

that PCFS had offered no explanation for its failure to take advantage of this extended filing deadline and noting that PCFS had known from very early in the case that the Trustee intended to challenge its mortgage, the court concluded that these facts, coupled with the large reduction in distribution to the allowed unsecured creditors, made it inequitable for PCFS's informal claim to be allowed.

In order for this panel to effectively consider this appeal, it must first examine the facts of *Waterman*. The informal proof of claim issue in *Waterman* arose in the context of a chapter 11 reorganization, with eleven unsecured and priority creditors, including Barlow who held an disputed claim representing about one-fourth of all unsecured claims. Barlow filed several motions in the case, "ostensibly in an effort to protect his interest in the [debtor's] assets," but no formal proof of claim prior to the claims bar date, "[m]istakenly believing that the filing of these motions obviated the need to file a proof of claim." *In re M.J. Waterman & Assocs., Inc.,* 227 F.3d at 606. Barlow subsequently requested that the pre-bar date motions be recognized as an informal proof of claim, a request the bankruptcy court denied based on its conclusion that the earlier filings did not contain a demand by Barlow on the debtor's estate or an intent to hold the debtor liable for a debt. *Id*. at 609. The bankruptcy court further determined that the allowance of Barlow's informal proof of claim would be inequitable because it would: (1) require the parties to wade through the creditor's voluminous filings to frame his exact demands; (2) result in undue delay and prejudice to the debtor; and (3) result in prejudice to the other creditors who had adhered to the Code's procedural requirements and whose time for payment would be doubled under the debtor's plan if Barlow's claim was allowed. *Id*. at 610-11. Upon appeal, the district court reversed, finding that the bankruptcy court had abused its discretion. *Id.* at 607.

Upon further appeal to the Sixth Circuit Court of Appeals, the court concluded that Barlow's filings were sufficient to fulfill all four elements of a valid informal proof of claim. *Id*. at 610. The court observed that the second and third prongs were less obvious than the first and fourth prongs:

> However, bearing in mind that we are applying the standards of a doctrine designed to lower the technical barriers to filing a claim, we are ultimately persuaded that the substance of Barlow's motions made clear to both the bankruptcy court and Waterman that Barlow was making a demand-albeit a rather uncertain one on the bankruptcy estate. We likewise conclude that Barlow's motions were sufficient to express his intent to hold the estate liable for that demand.

8

*Id.* at 609. As to the bankruptcy court's conclusion that allowance of the informal claim would be inequitable, the Sixth Circuit found no abuse of discretion and accordingly reversed the district court and affirmed the judgment of the bankruptcy court. The district court had observed that Barlow's omissions were mere technical defects that were salvageable in equity and dismissed the bankruptcy court's prejudice conclusion, noting that the plan had not yet been substantially consummated. The court of appeals observed that this was undoubtedly a reasonable conclusion, but one that failed to give proper deference to the bankruptcy court's judgment. *Id.* at 610.

> [W]e find no abuse of discretion in the bankruptcy court's refusal to allow Barlow to go back and formalize his claim where the bankruptcy court was motivated in large party by judicial economy and the interest in protecting the debtor and creditors, all of whom had adhered to the bankruptcy procedural rules, against further delay in distribution of the estate. This is a question on which reasonable minds might differ, and as such we uphold the bankruptcy court's ruling.

*Id*. at 611.

With this guidance, we turn to the merits of the instant appeal. Regarding the initial question of whether PCFS's pre-bar date filings constituted an informal proof of claim, we must disagree with the bankruptcy court's conclusion of law that the pre-bar date filings by PCFS did not contain a demand on the Debtors' estate or express an intent to hold the Debtors liable for the debt. The objection filed by PCFS to the Trustee's proposed sale, PCFS's motion for stay relief, and PCFS's defense of the adversary proceeding all evidenced a representation by PCFS that the Debtors were indebted to it and that PCFS was seeking to hold the Debtors' estate liable for this debt. The objection estimated the current balance on the promissory note, while the stay relief motion set forth the exact outstanding balance, the same as if PCFS were filing a proof of claim. PCFS attached a copy of its promissory note from the Debtors to its objection to the Trustee's proposed sale of the Debtors' residence and to its motion for stay relief. All of the information that PCFS would have been required to include in a formal proof of claim was set forth in the stay relief motion and the other documents. *See In re M.J. Waterman & Assocs., Inc.*, 227 F.3d at 608 (noting that proper proof of claim must include name and address of creditor, basis for claim, date that debt was incurred, classification and amount of claim, and copies of any supporting documents.). Thus, PCFS's

"actions were sufficient to put the court [and Trustee] on notice of [its] intention to seek to hold the [estate] liable." *Id.* at 609.

The bankruptcy court rejected these filings as insufficient, citing the uncertainty that would result from "liberal allowance of informal proofs of claim . . . which contain no explicit intention to hold the estate liable for any unsecured claim." (Appellant's Appx. at 281.) However, as explained in *Waterman*, the common law doctrine of informal proofs of claim is "designed to lower the technical barriers to filing a claim," thereby "alleviat[ing] problems with form over substance." *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d at 609. Moreover, there is nothing in *Waterman* to suggest that a creditor must specify that it is seeking to recover against the estate as an *unsecured* creditor. Because PCFS's filings clearly evidenced that it was making a demand on the bankruptcy estate and expressing its intent to hold the estate liable for that demand, the bankruptcy court erred in failing to recognize the validity of PCFS's claim.[3]

---

[3] There is some support from other jurisdictions for the position asserted by the bankruptcy court. *See In re Anchor Resources Corp.*, 139 B.R. 954, 957 (D. Col. 1992) (stay relief motion insufficient to constitute proof of claim because nowhere in motion did creditor indicate that it intended to hold the debtor liable for a deficiency or make a claim against the estate for the unsecured portion of the debt owed it); *In re Fink*, 366 B.R. 870 (Bankr. N.D. Ind. 2007) (utilizing what it characterized as a "less flexible standard," the court refused to hold that a stay relief motion constituted an informal proof of claim, observing that creditor sought to remove property from the bankruptcy estate, which was the antithesis of an attempt to hold the estate liable); *In re Glick*, 136 B.R. 654 (Bankr. W.D. Va. 1991) (in order to give fair notice of a claim, stay relief motion must recite that debtor obligated to pay the anticipated deficiency); *In re Mitchell*, 82 B.R. 583, 586 (Bankr. W.D. Okla. 1988) (actions of creditor in filing motion for stay relief and abandonment indicated intention to have property abandoned from the estate but did not indicate an intent to seek any distribution from the estate).

Regardless, our reading of *Waterman* is that a general intent to hold the estate, albeit estate property, liable for the debt is sufficient. It is noteworthy in this regard that the informal proof of claim test adopted by the Sixth Circuit in *Waterman* was taken from the bankruptcy court's decision in *In re Vaughn Chevrolet, Inc.*, 160 B.R. 316, 322 (Bankr. E.D. Tenn. 1993), wherein the court stated that "[a] motion to lift stay . . . may so clearly display a claim, and so obviously demonstrate an active intention by the creditor to realize upon its collateral, that it may be treated as an informal proof of claim." *See In re Gateway Invs. Corp*, 114 B.R. 784, 787 (Bankr. S.D. Fla 1990) ("Where a motion for relief from stay states as its purpose the intent to name the debtor in a lawsuit, that itself is strong evidence of an intent to hold the estate liable."); *In re Key*, 64 B.R. 786, 789-90 (Bankr.

(continued...)

Nonetheless, deference must be given to the bankruptcy court's judgment regarding whether the allowance of an informal proof of claim would be equitable. *Id*. at 610. As stated by the Sixth Circuit in *Waterman*, "[t]he question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision. If reasonable persons could differ as to the issue, then there is no abuse of discretion." *Id*. (citation omitted).

In concluding that the allowance of PCFS's informal claim would be inequitable, the bankruptcy court rightfully considered PCFS's lack of explanation for its failure to timely file a proof of claim. *See In re Townsville*, 268 B.R. 95, 108 (Bankr. E.D. Pa. 2001) (court rejected as inequitable debtor's attempt to have her plan treated as informal proof of claim filed by her on the creditor's behalf absent any explanation of failure for delay as would have been necessary if debtor had sought extension of time to file claim under Rule 9006(b)(1)) (citing *In re Grubb*, 169 B.R. 341, 348-49 (Bankr. W.D. Pa. 1994)). The court also appropriately took into account that, contrary to other creditors who had only three months notice to file proofs of claim, PCFS had over four years to file its claim, from the time the Trustee first filed her complaint to avoid PCFS's lien on October 4, 2001, to thirty days after the judgment in the adversary proceeding as affirmed by the BAP became final, i.e., October 16, 2005.[4] *See Clark v. Valley Fed. Sav. & Loan Ass'n. (In re Reliance Equities,*

---

[3](...continued)
M.D. Tenn. 1986) (motion for stay relief along with other documents sufficient to constitute proof of claim where creditor asserted in documents that it was owed money by the debtor, submitted copies of documents forming the basis for the monetary claims, and documents included all of information required by official claim form); *In re Garza*, 222 Fed. Appx. 350, 352 (5th Cir. 2007) (Citing *Waterman*, court held that creditor's motion for relief from automatic stay so that it could liquidate its claim against debtor in state court constituted informal proof of claim.); *In re Thompson*, No. 00-11209(1)(3), 2006 WL 2385337, at *2 (Bankr. W.D. Ky. Aug. 17, 2006) (concluding that stay relief motion clearly put debtor on notice of claim because it set forth nature of claim, amount, and an intent to hold the estate liable).

[4] The Dissent argues that PCFS's failure to file a formal proof of claim was not a four-year delay because PCFS spent this time defending its secured position and the filing window missed was at most the thirty days after the bankruptcy court's judgment became final on appeal. We respectfully disagree with this characterization. The Debtors filed for bankruptcy relief on March 20, 2001. The Trustee stated in her response to PCFS's motion for allowance of informal proof of claim that she advised PCFS and its counsel at the § 341 meeting of creditors, which was held on
(continued...)

*Inc.)*, 966 F.2d 1338, 1345 (10th Cir. 1992) ("equities do not favor protecting a [creditor] that had numerous opportunities to protect itself"); *In re Turner*, 2003 WL 238107, at *3 (Bankr. D. Kan. Jan. 2, 2003) (in weighing equitable considerations as to allowance of informal proof of claim, court considered creditor's unexplained failure to file a timely proof of claim after its security interest was avoided, noting that creditor already had one extension under Rule 3002(c)(3)). But for PCFS's claim, these other creditors, who timely followed the procedural rules, would receive payment in full plus interest. However, if PCFS's claim were allowed, these creditors would only receive less than a third of their claims, without interest, while PCFS, who did not follow the rules, even though it had sixteen times longer to meet the filing requirements, would receive the bulk of the distribution.[5]

---

[4](...continued)
May 21, 2001, that she "would be seeking to avoid [PCFS's] lien." (Appellant's Appx. at 191-92.) While there is nothing in the record to support this statement, PCFS admits in its appellate brief that the Trustee indicated in her motion to employ counsel filed July 25, 2001, that she "intended to challenge the mortgage of PCFS." (Appellant's Brief at 15.) Thus, PCFS was placed on notice more than four years before the judgment against it became final in the fall of 2005 that its secured position was at risk and that it would need to file a proof of claim in order to receive any distribution from the bankruptcy estate. Arguably, this notice became much louder and more urgent each battle that PCFS lost in its efforts to defend its mortgage: the adverse judgment by the bankruptcy court on June 9, 2003; the Ohio Supreme Court's ruling on December 17, 2004, holding the mortgage savings statute unconstitutional; and, finally, the BAP's affirmance of the bankruptcy court judgment on September 16, 2005. Notwithstanding the many implicit reminders, PCFS still had not filed a proof of claim by January 5, 2007, when the Trustee filed her Final Report, almost six years after the Debtors first filed for bankruptcy relief.

[5] The Dissent rejects as irrelevant the resulting reduction in distribution to other creditors, stating that if this were a consideration every informal claim would be disallowed. We admit that the mere fact of dilution is in and of itself insufficient to establish prejudice. We disagree, however, that it is of no relevance whatsoever, especially when the dilution is substantial, as the Dissent concedes that it is in this case. *See In re Pabis*, 62 B.R. 633, 637 (Bankr. D. Conn. 1986) (court observed that while allowing an informal proof of claim might always to some extent prejudice other unsecured creditors, circumstances of a given case might justify such allowance where a balancing of the equities weighs in favor of the late-filing creditor; in case before it, however, court concluded that equities were against creditor who had failed to advance a reason for its delay in filing and where allowance of claim would be at expense of unsecured creditors who had diligently followed the rules).

12

We are unable to conclude that the bankruptcy court's rejection of this outcome was unreasonable.

> The practice of bankruptcy law is built on a foundation of providing proper notice to creditors, debtors, and the court and it is fraught with the perils and pitfalls of missed deadlines for its practitioners. The informal proof of claims process is an exception to the formalities of the Bankruptcy Code, but it is one which must operate within the confines of a system whose ultimate goal is the equitable and timely distribution of bankruptcy estates.

*In re M.J. Waterman & Assocs., Inc.*, 227 F.3d at 610. Whether the allowance of an informal proof of claim is equitable under the circumstances of this case is a question upon which reasonable minds could differ. Therefore, the bankruptcy court's holding was not an abuse of discretion.

The Dissent disagrees with this outcome, arguing that a balancing of the interests of all the parties makes it "entirely equitable" for PCFS's claim to be allowed. While the Dissent's conclusion is a plausible, and even a reasonable view, we respectfully believe that the Dissent "is impermissibly substituting [his] own judgment in place of that of the bankruptcy court." *Id*. at 612. In ruling against PCFS, the bankruptcy court balanced the very substantial reduction in distribution to other creditors, with PCFS's unexplained failure and substantial delay in seeking to assert a proof of claim. As the court stated, "Because PCFS Financial knew from very early on in this case that the trustee intended to challenge its mortgage on the Property, the unexplained failure to take advantage of the extended proof of claim filing deadline coupled with a very large reduction in return to unsecured creditors who did file proofs of claim would work too large an inequity for an 'informal' proof of claim by PCFS Financial to be allowed." (Appellant's Appx. at 285.) The Sixth Circuit recognized in *Waterman* that this is a "delicate balance" that should not be disturbed absent an abuse of discretion. *Id.* at 609. Because the bankruptcy court's weighing of the equities in this case was not so unreasonable "as to be unsupportable or to leave us with a 'definite and firm conviction that the bankruptcy court committed a clear error of judgment,'" we must affirm. *Id*. at 612 (citation omitted).

## CONCLUSION

For the foregoing reasons, the bankruptcy court's order is AFFIRMED.

13

STEVEN RHODES, Bankruptcy Appellate Panel Judge, concurring in part and dissenting in part.

I concur in the Panel's conclusion that PCFS's informal proof of claim met the first four parts of the test for allowing such a claim, as established in *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 607 (6th Cir. 2000). I also agree with the Panel that under *Waterman*, the bankruptcy court was required to consider whether it would be inequitable to allow PCFS's informal proof of claim. *Id.* at 609. I also agree with the bankruptcy court that in doing so, *Waterman* required it to balance the interests of all parties. *Id.* at 610. (Docket No. 76, June 21, 2007 Op. at 8; Appellant's Appx. at 284.) Finally, I agree with the Panel that under *Waterman*, the bankruptcy court's determination on that point is reviewable only for abuse of discretion. *Id.* at 610.

I part company with the Panel, however, on its conclusion that the bankruptcy court did not abuse its discretion on this point. As the Panel notes, the bankruptcy court's conclusion was based on two considerations. The first was that PCFS failed to explain its failure to file a timely proof of claim even though it had over four years to file it. The second was that allowing PCFS's proof of claim would substantially dilute the distributions to creditors who did file timely proofs of claim. I conclude that neither of these considerations arguably justifies the conclusion that allowing PCFS's claim would be inequitable.

As to the first consideration, the record clearly establishes that PCFS's failure to file an unsecured proof of claim was not a failure of over four years' duration, because for most that time, PCFS was vigorously asserting in the judicial process that its claim was secured, not unsecured. It was only when the bankruptcy court's judgment became final after appeal and PCFS decided against a further appeal that PCFS could rationally have been required to file an unsecured proof of claim. Accordingly, the filing window that it missed was at most thirty days under Fed. R. Bankr. P. 3002(c)(3), and arguably even less than that.

As to the second consideration, the dilution of distribution on other creditors' claims is a necessary consequence every time an informal proof of claim is allowed. Accordingly, if this factor

14

were relevant in balancing the interests of the parties, every informal proof of claim would have to be denied and the doctrine itself would be swallowed whole. In this regard it must also be noted that although in this case that dilution is substantial - from 100% to 29% by the bankruptcy court's calculation, that calculation is a function both PCFS's claim and the other claims, and is therefore of very limited relevance in balancing the equities of the parties' positions.

Finally, in balancing the interests of all parties as required by *Waterman*, three considerations make it entirely equitable for PCFS to participate in the distribution of assets from the bankruptcy estate. The first is that from nearly the beginning of the case all of the parties knew or could have known by examining the court record that any distribution to them would come primarily from PCFS's collateral; the trustee's claim against PCFS was by far the largest asset of the estate. (After avoiding PCFS's lien, the home sold for $280,000. The only other significant asset, a vacant parcel of land sold for $20,000.) The second is that from nearly the beginning of the case all of the parties knew or could have known by examining the court record that PCFS had by far the largest claim against the debtors and the estate; its claim was no surprise. The third is that allowing PCFS an informal proof of claim would not have resulted in any prejudicial delay in paying creditors because the trustee did not object to the amount of PCFS's claim and nothing in the record suggests any legal basis for an objection. Upon balancing the interests of all parties, as required by *Waterman*, reasonable minds cannot disagree with the conclusion that it would be fundamentally fair and equitable to allow PCFS a distribution from its own collateral even though it missed a thirty day window to file a formal proof of claim after its appeal was denied.

Accordingly, I would reverse the order of the bankruptcy court disallowing PCFS's informal proof of claim.